# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 17-CR-2009-LRR |
| vs. | **ORDER** |
| AIRRINGTON L. SYKES, | |
| Defendant. | |

## *I. INTRODUCTION*

The matter before the court is Defendant Airrington L. Sykes's Objections (docket no. 26) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 19), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 11).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On March 2, 2017, a grand jury returned a one-count Indictment (docket no. 2) charging Defendant with possession of a firearm by a felon in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(2). The Indictment also contained a forfeiture allegation. On April 3, 2017, Defendant filed the Motion. On April 10, 2017, the government filed a Resistance (docket no. 14). On April 17, 2017, Judge Williams held a hearing ("Hearing") on the Motion. *See* April 17, 2017 Minute Entry (docket no. 15). Defendant appeared in court with his attorney, Christopher Nathan. Assistant United States Attorney Anthony Morfitt represented the government. On April 21, 2017, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On

May 5, 2017, Defendant filed the Objections. The Report and Recommendation regarding the Motion and the Objections are fully submitted and ready for decision.[1]

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

---

[1] On April 24, 2017, Defendant entered a conditional plea of guilty to the offense alleged in the Indictment. *See* April 24, 2017 Minute Entry (docket no. 20). On April 25, 2017, Judge Williams issued a Report and Recommendation (docket no. 22), which recommended that the court accept Defendant's plea of guilty. Both parties waived objections to the April 25, 2017 Report and Recommendation regarding Defendant's plea of guilty. *See* Waiver (docket no. 23). On April 26, 2017, the court accepted the April 25, 2017 Report and Recommendation. Order Accepting Conditional Guilty Plea (docket no. 24).

## IV. RELEVANT FACTUAL BACKGROUND[2]

On December 4, 2016, at approximately 11:50 p.m., Waterloo Police Officer Ryan Muhlenbruch was dispatched to Clean Laundry, a laundromat, in Waterloo. Exhibit 1 (docket no. 14-2) at 1. Officer Muhlenbruch was in uniform, but drove an unmarked police car. When Officer Muhlenbruch arrived at the laundromat parking lot, he made contact with Angie Lindsey. *See id*. Lindsey stated, that while doing her laundry, "she had [placed] clothes inside of a laundry basket after taking them from the dryer and when she took the clothes out of the basket, she located [a loaded] silver handgun magazine." *Id*. Lindsey told Officer Muhlenbruch that "there were only two other people inside the [laundromat] when she was there and," although she did not know if they had anything to do with the magazine, "they had been hanging around the basket [in which] she located the magazine." *Id*.; *see also* Exhibit A.[3] Lindsey identified two "young[] black males wearing mostly dark clothing," one of whom was Defendant, as the individuals who were in the laundromat. Exhibit 1 at 1.

Officer Muhlenbruch requested assistance and Officer Luke Lamere arrived shortly thereafter in a marked police vehicle. The officers approached the laundromat entrance on foot, crossing in front of two large plate-glass windows. Defendant was standing in an aisle approximately twenty feet from the front windows. Once the officers entered the laundromat, they approached the two men Lindsey had identified. Officer Muhlenbruch testified that he did not see a bulge in Defendant's clothing indicating that Defendant was

---

[2] After reviewing the Hearing Transcript (docket no. 29), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-6. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

[3] Exhibit A is a video from Officer Muhlenbruch's body camera depicting the December 4, 2016 encounter. Exhibit A was offered by Defendant and accepted by the court at the hearing. *See* April 17, 2017 Minute Entry at 2.

armed. As the officers approached, Defendant turned and walked briskly[4] toward the back of the laundromat. Officer Muhlenbruch followed Defendant, who passed by an exit in the rear of the laundromat and entered a bathroom. Officer Muhlenbruch reached the bathroom door just as Defendant entered it. Officer Muhlenbruch opened the bathroom door and asked[5] Defendant to come out of the bathroom. Defendant complied as Officer Muhlenbruch grabbed hold of Defendant's sleeve to guide Defendant out of the bathroom. Officer Muhlenbruch subsequently directed Defendant against the wall. As Officer Muhlenbruch did so, Defendant said "I have my homies [sic]" and pointed toward his waist. Hearing Transcript at 4. Officer Muhlenbruch then conducted a pat-down search of Defendant and ultimately recovered a handgun from Defendant's pants pocket.

## V. ANALYSIS

Pursuant to the Fourth Amendment, warrantless searches are per se unreasonable, "subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "A police officer 'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States of America v. Fields*,

---

[4] In his Objections, Defendant "objects to the Report [and Recommendation]'s characterization of [his] brisk walk to the bathroom as flight." Brief in Support of Objections at 1 (docket no. 26-1). The description of Defendant's walk as brisk is supported by the record. *See* Hearing Transcript at 4. Additionally, Judge Williams does not characterize the "brisk walk" as "flight." Rather, he references the brisk walk as a factor in assessing whether there is reasonable suspicion. Therefore, the court will address this as a factor in the reasonable suspicion analysis below.

[5] Judge Williams found that Officer Muhlenbruch "asked" Defendant to come out of the bathroom. Report and Recommendation at 4. Defendant objects to Judge Williams's "use of the word 'asked' to the extent that it suggests that the encounter was consensual." Brief in Support of Objections at 1. The court assumes for the purposes of this order that the encounter was not consensual. However, this assumption does not impact the court's analysis of reasonable suspicion giving rise to the *Terry* stop.

4

832 F.3d 831, 834 (8th Cir. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Officers may conduct a pat-down search for weapons if they have reasonable suspicion that the person is armed. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Id*. "The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience." *Fields*, 822 F.3d at 834 (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)); *see also United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citations and internal quotation marks omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id*. at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

In this case, Officer Muhlenbruch arrived at the laundromat at approximately 11:50 p.m. in response to a call from a patron who reported finding a handgun magazine inside the laundry basket she was using. When the officers arrived at the laundromat, they made contact with the patron. She identified the only two other people who had been inside the laundromat when she found the magazine. Although she did not know whether they had anything to do with the magazine, she did report that they had been hanging

5

around the basket in which she located the magazine. When the officers entered the laundromat, Defendant turned and walked briskly toward the bathroom at the back of the laundromat. *See* Hearing Transcript at 4, 12; *see also United States v. Roelandt*, 827 F.3d 746, 749 (8th Cir. 2016) ("[Defendant's] acts, although largely 'consistent with innocent behavior,' when taken together with all of the facts and circumstances known to the officers, '[gave] rise to reasonable suspicion.'" (second alteration in original) (quoting *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011)). Based on the information the officer received from the patron and Defendant's act of immediately walking away as the uniformed officers approached, the officers had reasonable suspicion to believe that the Defendant may have been armed. *See United States v. Quinn*, 812 F.3d 694, 697-98 (8th Cir. 2016) ("Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence.") (quoting *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995)); *United States v. Davison*, 808 F.3d 325, 329-30 (8th Cir. 2015) (finding reasonable suspicion where defendant "appeared to be walking in a circle near [a] stolen truck in a high-crime neighborhood" and took "actions suggesting [he was] trying to avoid police contact").

Defendant does not appear to dispute that the officers "had reason to believe that the Defendant may be armed." Brief in Support of Objections at 2. Rather, Defendant argues that Judge Williams erred in finding that the *Terry* stop was proper because firearm possession is not per se unlawful in Iowa, where persons are permitted to carry concealed firearms. *Id*. at 1-2. Because it is increasingly common for a person to possess a permit to lawfully carry weapons, Defendant argues that the officers did not have reasonable suspicion Defendant was committing a crime. *Id*. at 2. Defendant asserts that, to hold otherwise, "would strip away the Fourth Amendment rights of . . . persons . . . in possession of permits to carry." *Id*. at 2.

As noted by Judge Williams, Iowa Code § 724.4(1) provides that, subject to certain exceptions, "a person who goes armed with a dangerous weapon concealed on or about the person . . . commits an aggravated misdemeanor." Iowa Code § 724.4(1). "[A]bsence of a permit [is not] an element of the offense." *State v. Bowdry*, 337 N.W.2d 216, 218 (Iowa 1983). Rather, "statutory exceptions are affirmative defenses." *State v. Leisinger*, 364 N.W.2d 200, 202 (Iowa 1985); *see also State v. Nelson*, 828 N.W.2d 325, 2013 WL 104796, at *2 (Iowa Ct. App. Jan. 9, 2013) ("[T]he defendant, rather than the State, possesses personal knowledge of whether an exception may apply."). The cases cited by Defendant are unpersuasive because they involve jurisdictions where concealed and/or open carry are presumptively lawful. While Defendant's position may or may not have merit in such jurisdictions, it plainly fails in jurisdictions like Iowa, where possessing a permit is an affirmative defense. *Compare United States v. Ubiles*, 224 F.3d 213, 218 (3d Cir. 2000) ("For all the officers knew, even assuming the reliability of the tip that [the defendant] possessed a gun, [he] was . . . lawfully exercising his rights under Virgin Islands law to possess a gun in public."), *with United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010) (distinguishing *Ubiles* because, "under Delaware law, carrying a concealed handgun is a crime to which possessing a valid license is an affirmative defense, and an officer can presume a subject's possession is not lawful until proven otherwise").

Because the officers had reasonable suspicion that Defendant was carrying a concealed weapon, which is presumptively illegal in Iowa, Judge Williams correctly found that "there were reasonable articulable facts to believe criminal activity was occurring"—specifically, "that one of the two men in the laundromat identified by the witness was committing the offense of carrying a concealed weapon." Report and Recommendation at 11. Because the officers had reasonable suspicion, the *Terry* stop was proper.

Defendant argues that, even if the *Terry* stop was lawful, Judge Williams erred in finding that the *Terry* frisk was lawful. Brief in Support of Objections at 3.

"Following a valid *Terry* stop, the officer may conduct a limited pat-down search of the individual's outer clothing for the purpose of uncovering concealed weapons if the officer has a reasonable, articulable suspicion that the person is armed and dangerous." *United States v. Gilliam*, 520 F.3d 844, 847-48 (8th Cir. 2008) (citing *Terry*, 392 U.S. at 30). "[T]he totality of the circumstances is the touchstone of [the court's] analysis—facts such as the time of day, the suspect['s] location, and [his or her] behavior when [he or she] become[s] aware of the officer's presence, considered together with the inferences and deductions made by the officer." *Davison*, 808 F.3d at 330. "[A] pat-down is permissible if a 'reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" *Horton*, 611 F.3d at 941 (quoting *Terry*, 392 U.S. at 27). As discussed above, the officers had reasonable suspicion that Defendant was armed. The encounter also happened late at night and involved unusual circumstances, that is a loaded magazine for a firearm being left in a laundry basket. *See United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992) (finding officer "was warranted in the belief that his safety was in danger in light of the fact that it was late at night" among several other factors). Additionally, Officer Muhlenbruch testified that when Defendant walked toward the back of the laundromat he became concerned that Defendant may have been attempting to ready a weapon by locking himself in the bathroom. *See* Hearing Transcript at 4. In light of these facts, the court agrees with Judge Williams's finding that the pat-down search of Defendant's outer clothing was supported by reasonable suspicion that Defendant was armed and dangerous.

## VI. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 26) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 19) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 11) is **DENIED**.

**DATED** this 5th day of June, 2017.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA